Filed 7/18/13  Marriage of Kleytman and Pechonkina CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re the Marriage of KLEYTMAN and PECHONKINA. | |
| YAKOV KLEYTMAN,<br>        Appellant,<br>v.<br>ALENA PECHONKINA,<br>        Respondent. | A134740<br><br>(San Mateo County Super. Ct.<br> No. FM082528) |

Yakov Kleytman and Alena Pechonkina were divorced in 2005 and a 2008 family court order governs their custody and visitation rights regarding their daughter. Kleytman, proceeding in propria persona, appeals the denial of his motion to modify the 2008 order because of alleged changed circumstances.  Kleytman contends that the court: (1) ignored the changed circumstance of an increased conflict between the parties; (2) ignored the best interest of the child; (3) violated Family Code section 3048[1]; and (4) made its order without evidentiary support.  Kleytman also appeals:  (1) the award, pursuant to section 271, of $2,500 in attorney's fees to Pechonkina and (2) the court's determination that it was not in the best interest of the child for the court to privately interview her.  In addition, Kleytman requests that we sanction the Commissioner presiding in his case.

---

[1] Unless otherwise indicated, all statutory citations are to the Family Code.

1

We affirm the order of the family court, with the exception of the award of attorney's fees, because the record does not indicate that Kleytman received proper notice of a section 271 sanction for all the conduct upon which the award was based. The award of attorney's fees is reversed, and the matter remanded for consideration of an award based on Kleytman's conduct for which he received proper notice.

In connection with his appeal, Kleytman submitted a motion seeking expedited review and a change in the visitation schedule. Kleytman's motion has been denied because the issue of expedited review is now moot and Kleytman's allegations supporting his request for a change in the visitation schedule must first be heard in family court.

## BACKGROUND

Following Kleytman's and Pechonkina's 2005 divorce, a marital settlement agreement established joint physical and legal custody of the child. As the Superior Court docket indicates, Kleytman and Pechonkina have serious differences concerning how this joint custody should be managed. The current visitation orders, made in 2008, are that (1) Pechonkina's home is the child's primary residence during the school year; (2) during the school year, Kleytman has care of the child on the first and third weekends of the month; (3) except for August, if a month of the school year has five weekends, Kleytman has care of the child on the fifth weekend; (4) pick ups and drop offs are to be at the child's school, if possible; (5) during the summer, Kleytman and Pechonkina are to alternate weeks, with Kleytman receiving two extra weeks—the seventh and ninth; and (6) several holidays are designated to either Kleytman or Pechonkina.

On April 1, 2011, Kleytman filed a motion for modification of the visitation order so that Pechonkina would be responsible for transporting the child to and from his residence for weekend visitation, to reduce the amount of driving required of him. At a hearing on April 28, the court asked Kleytman what changed circumstances justified modification of the 2008 order. Kleytman stated that the driving interfered with his career development and affected his health. The court asked Kleytman for evidence of this and Kleytman said he did not have it that day, but could secure it. The court informed Kleytman that if it put the matter over for an evidentiary hearing, he would be

2

expected to produce witnesses to testify in support of his assertions. Counsel for Pechonkina asked that Kleytman be placed on notice that Pechonkina would be requesting attorney's fees, pursuant to Family Code section 271, if there was no evidence of changed circumstances presented at an evidentiary hearing. The court admonished Kleytman: "Either you will have the evidence or you won't. You show up here without the evidence, I will consider [Pechonkina's] request for fees because you can't keep coming into court asking for things because you just think previous orders are not fair. You can't keep coming in and asking for things when you don't have the evidence." An evidentiary hearing was set for June 24.

At the June 24, 2011 hearing, Kleytman had no witnesses but had a copy of his company's employment policy and letters from doctors. After objection by Pechonkina's counsel, the court ruled that the letters were hearsay and would not be admitted into evidence. Kleytman was unable to explain how the employment policy indicated that the required driving of the child prevented him from advancing professionally and the exchange with the court undermined his claim that driving the child damaged his health, because he was required to drive even longer distances for work. Pechonkina's counsel reiterated the request for fees.

The court denied Kleytman's motion to modify the 2008 order because there was no evidence of medical or physical disability that prevented him from driving and his arguments regarding the impact on work were insufficient to prove that he could not continue to do the driving. The court stated that it would consider the request for fees if Pechonkina's counsel submitted a declaration concerning the costs involved in the April 1 and June 24 hearings, after which Kleytman would have a week to respond, including a current income and expense declaration. The court's order denying the motion was filed on August 2, 2011.

On June 27, 2011, Kleytman filed another motion for modification of the 2008 visitation order. The motion sought a mirror image of the current visitation arrangement, with Kleytman having custody of the child during the school week and every other weekend and Pechonkina having custody on the alternate weekends. As the change in

circumstances justifying the motion, Kleytman cited Pechonkina's plan to move and enroll the child in another school district. Pechonkina's responsive papers included notice that she would again request attorney's fees at the hearing.

At a hearing on August 15, 2011, Pechonkina's counsel argued that after the move, Pechonkina would live closer to Kleytman. He also argued that although the child would now be changing schools, she had been in the same school for the last three years and had not been subjected, as Kleytman represented, to an unstable school environment. Kleytman told the court that the child wished to address the court personally. He also told the court that it would actually take him longer to drive to the new home, though geographically closer, because he would have to deal with bridge traffic. The court indicated that it would order Kleytman and Pechonkina to participate in mediation by Family Court Services. Following a recess, a mediation date of October 27, 2011, had been set with Family Court Services. The court ordered the parties to return on November 21, 2011.

On October 31, 2011, Family Court Services submitted its report to the court. This report indicated that Kleytman and Pechonkina had not come to agreement and recommended that the parents undergo an updated private child custody evaluation—an evaluation that Family Court Services could not itself provide. It also recommended that the current custody and visitation orders remain in effect pending the outcome of the child custody evaluation.

At a hearing on November 21, 2011, both Kleytman, in a declaration, and Pechonkina, through counsel, opposed the recommendation. The court noted that the mediator had been unaware that many of Kleytman's concerns had been addressed in numerous hearings before the court. The court had arranged with Family Court Services for the mediator to interview the child and to contact a counselor who had been involved with the family relationships. Pechonkina's counsel then brought up the request for attorney's fees and Kleytman said there was a change of circumstances. He informed the court that he had recently had surgery, had been forced to quit his job for health reasons, and was on disability. Kleytman also renewed his request, because of his health issues,

4

for relief from the driving requirement imposed by the current visitation order. Questioned by the court, Kleytman said that his surgery took place on October 7 but that he had managed since then to transport his daughter as required. During a recess, the Family Court Services mediator set November 28 as the date to interview the child. The court ordered the parties to return for a hearing on December 19. The court continued the matter of Kleytman's driving pending new recommendations from the mediator. The court pointed out to Kleytman that the issue of the driving requirement was not in his moving papers and that he should deny the request for that reason, but he would reserve the issue until the next hearing. The court also stated that it was inclined to grant Pechonkina's request for fees, but needed an updated income and expense declaration from Kleytman.

Family Court Services filed an updated report with the court. The mediator recommended that the current custody and visitation orders remain in effect, but that Pechonkina and the child be ordered to resume mother-daughter counseling for at least 12 sessions, selecting a therapist from one of three recommended by the mediator.

At a hearing on December 19, 2011, Pechonkina's counsel stated that the recommendation was acceptable to her, but requested that the court allow her to select a therapist at Kaiser, so that insurance would cover the cost. The court found that it was not in the best interest of the child for the court to interview the child, because the child had been interviewed by Court Family Services and that interview was emotional for her: "I don't want to put her through that again." Regarding fees, Kleytman had submitted an income and expense statement, but stated in his declaration that the court, in making its ruling, should assume that he was still working.[2] The court adopted the recommendations made by Family Court Services, with the modification that a therapist experienced "in this type of counseling" could be chosen. The court also granted

---

[2] Kleytman's declaration contained the following: "If I was ordered to continue driving with an open wounds [*sic*] and nurse dressing them every day, then I believe that asking the court not to stipulate my income even during lasting unemployment in the country, is just a waste of time. Just consider me 'fully employed,' like I did not quit at all. Based on this I present two last paystubs . . . ."

Pechonkina's request for attorney's fees, ordering Kleytman to pay Pechonkina's counsel $2,500. The court's order, following the hearing, was filed on December 30, 2011.

Kleytman filed a notice of appeal on February 23, 2012.

## DISCUSSION

Kleytman appeals from the family court's order of December 30, 2011, adopting the recommendations made by Family Court Services. Maintaining the terms of the 2008 custody and visitation order was part of those recommendations, so that the court's order was an implicit denial of Kleytman's June 27, 2011 motion to modify the 2008 order because of changed circumstances due to Pechonkina's move and the child's change of school. Kleytman's briefs on appeal dwell on many issues unrelated to the denial of his June 27, 2011 motion. We consider only Kleytman's June 27, 2011 motion and the subsequent proceedings in family court, except as necessary to address the award of attorney's fees.

### I. *The Denial of Kleytman's Motion*

Kleytman first asserts that the family court erred because it "ignored the key issue" which he identifies as "an escalated high intensity conflict between parents and its effects on their child." Kleytman cites an Oregon case recognizing that "the increased conflict between the parents and the effect of that conflict on child constitutes a substantial change in circumstances." (*Buxton v. Storm* (2010) 236 Or. App. 578, 580.) However, Kleytman never asserted in his moving papers that the conflict between him and Pechonkina had escalated and that this was, in addition to the move and change in school, a changed circumstance. Nor, at the hearings, did Kleytman assert or offer any proof that the conflict had escalated since the 2008 order was entered. If the conflict has escalated since 2008, Kleytman is free to seek a change to the 2008 order in family court on that basis, but he cannot do that in an appeal of an order that rejected a different assertion of changed circumstances.

Kleytman's second assertion of error is that the court "avoided to ask the ultimate question whether the current situation as shown in its entirety is detrimental to [the child]." We find nothing in the record indicating that the family court was unconcerned

6

with the best interests of the child. At the August 15, 2011 hearing, Kleytman was unable to demonstrate that Pechonkina's move and the child's change of school were a changed circumstance that warranted a change to the 2008 order. Nevertheless, the court ordered mediation by Family Court Services. When both Kleytman and Pechonkina objected to the mediator's recommendations, the court again involved Family Court Services to interview the child and adduce additional background information. The outcome with which Kleytman is unhappy was one that took account of his input, as well as that of Pechonkina and the child. Kleytman can point to no factual finding by a court or evidence beyond his own declarations that would lead us to believe that the family court did not proceed in the best interest of the child in this case.

Kleytman also alleges that the court's order was not compliant with Family Code section 3048, subdivision (a), which specifies the contents that "every custody or visitation order shall contain." We are not persuaded that section 3048 applies to the family court's order, because it simply left an existing custody and visitation order in place and only added a requirement for mother-daughter counseling. In any case, even if we found that section 3048 did apply and that the court's order did not comply, Kleytman does not explain why non-compliance was prejudicial to him or provide authority for the proposition that reversal would be required even in the absence of prejudice. (See, e.g., *People v. Freeman* (1994) 8 Cal.4th 450, 509-511 [declining to reverse a death sentence, absent prejudice, because of failure to comply with Penal Code section 190.9, requiring that all proceedings in a capital case be conducted on the record with a court reporter present].)

Finally, Kleytman contends that the court's order is not supported by the evidence. He is wrong. It was Kleytman's burden to show that changed circumstances warranted a change in the current custody and visitation order. His contention was that Pechonkina's move and the child's change of school was such a change in circumstances. However, Pechonkina was actually moving closer to Kleytman and the child had not experienced an unstable school environment. Despite being unconvinced that this change in circumstances would justify a change in custody or visitation, the court ordered Family

7

Court Services mediation, which ultimately resulted in a report that recommended keeping the current custody and visitation orders in place. The record provides ample reason for a court to determine that Kleytman had failed to satisfy his burden.

## II. *The Sanction Imposed on Kleytman*

In relevant part, Family Code section 271 provides: "(a) Notwithstanding any other provision of this code, the court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. An award of attorney's fees and costs pursuant to this section is in the nature of a sanction. In making an award pursuant to this section, the court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities. The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed. In order to obtain an award under this section, the party requesting an award of attorney's fees and costs is not required to demonstrate any financial need for the award. [¶] (b) An award of attorney's fees and costs as a sanction pursuant to this section shall be imposed only after notice to the party against whom the sanction is proposed to be imposed and opportunity for that party to be heard." The notice required by subdivision (b) "must also advise of the specific grounds and conduct for which the fees or sanctions are sought, and must be directed to the specific person against whom they are sought." (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1529.)

Kleytman appeals the court ordered sanction that he pay $2,500 to Pechonkina's counsel. The family court docket indicates that in the year prior to Kleytman's motion of April 1, 2009, Kleytman had filed motions for modification of the 2008 order on May 3 and August 18, 2010  After hearings, both of these motions were denied. Following the August 18, 2010 motion, the court ordered Kleytman to pay Pechonkina's counsel $1,500 in attorney's fees. Kleytman appealed and we reversed the award of attorney's fees because the record did not indicate that the notice required by Family Code section 271,

8

subdivision (b), had been provided to Kleytman. (*Kleytman v. Pechonkina* (Apr. 24, 2012, A130779) [nonpub. opn.].)

Kleytman contends that the family court had no cause to impose a sanction. Kleytman was clearly put on notice, at the hearing on April 28, 2011, that Pechonkina would be seeking payment of attorney's fees. The court informed Kleytman that if he came to the next hearing without witnesses who could testify that transportation of the child harmed his career or health, then it would consider the request for attorney's fees. Kleytman came to the next hearing without admissible evidence and this establishes cause for the imposition of the sanction.

However, the sanction was not imposed solely because of the proceedings related to the April 1, 2011 motion. At the December 19, 2011 hearing, the court stated: "Regarding the request by [Pechonkina] for contribution of fees, again, it's not just, for the record, based on today's hearing, or this motion, it was in connection with the previous several motions filed by [Kleytman]. That request is granted."

On November 16, Pechonkina's counsel filed a declaration in support of Pechonkina's request for Attorney's fees. This declaration cites Kleytman's motions of May 3, 2010 and August 18, 2010, which were denied. It notes that following the hearing on the August 18, 2010 motion, Kleytman was ordered to pay $1,500 in attorney's fees, which had not been paid. It went on to note that on October 8, 2010 and November 16, 2010, Kleytman filed motions concerning that award of fees, and those motions were denied. It noted that Kleytman's motion of April 1, 2011, was denied and that the parties were referred to mediation following the motion of June 27, 2011. All this declaration establishes is that Kleytman is a frequent litigant, but the simple fact that he has made motions that were denied does not, in itself, mean that those motions were frivolous. We cannot interpret this declaration as providing notice of "specific grounds and conduct" for which sanctions are appropriate.

If the award of attorney's fees had been based solely on Kleytman's conduct related to the April 1, 2011 motion, for which, as we have noted, proper notice had been provided, we would affirm the award of fees. However, the court based the award, to an

9

unknown extent, on unspecified conduct "in connection with the previous several motions," including the June 27, 2011 motion that was currently before the court. Because Kleytman had notice only about specific conduct related to the April 1, 2011 motion, we must reverse the award of attorney's fees and remand to the family court, which may reimpose an award of attorney's fees limited to the Kleytman's conduct connected to the April 1, 2011 motion.

## III. *Request that the Child be Interviewed by the Court*

Kleytman objects to the court's determination that it was not in the child's best interest to be interviewed by the court, complaining that "there is not a single word in the court order of why the child's testimony would not be in her best interest." However, the court clearly explained its reasoning during the hearing—the child had been interviewed by Court Family Services, that interview was emotional for her, and the court did not want to repeat that ordeal for her. Kleytman believes that California Rules of Court, rule 5.250 requires the court to state its reason for declining to interview a child in writing, but we find no such requirement in that rule.

## IV. *Kleytman's Allegations Concerning the Commissioner and Requested Sanctions*

Under the current visitation order, Kleytman is required to pick up the child at her school for weekends that the child is with him, and drop her off at school after the weekend. Kleytman raised the issue of his driving at the November 21, 2011 hearing, stating that he needed relief from the requirement for health reasons, due to a recent surgery. The court reserved the matter for the next hearing. Although Kleytman, in a subsequent declaration, included attachments demonstrating the fact of his recent surgery, none of those attachments would tend to show that he was currently unable to safely drive the child. Because of this, Kleytman asks us to take the following actions against the Commissioner presiding in family court: "to relie[ve] her from the bench, revoke her license to practice law, terminate her judicial immunity and subject to a criminal inquiry to be charged with 2 counts of child endangerment and 1 count of aggravated assault and battery." Even if we had the power to extend such relief, Kleytman provides no reason

for us to do so, not least because the record is devoid of evidence, beyond his own declaration, that he could not safely transport the child.

## DISPOSITION

The family court's order of December 30, 2011 is affirmed, with the exception of the award of attorney's fees to Pechonkina, which is reversed. The matter of attorney's fees is remanded to the family court, which may impose fees only for conduct for which Kleytman has received proper notice.

_____
Lambden, J.

We concur:


_____
Kline, P.J.


_____
Richman, J.

11